AHHRN, P.,
delivered the opinion of the court:
A distinction seems to have been taken by some of the reported cases, as to the relief a court of equity will extend to a vendee who has accepted his deed with covenants of general warranty, where he .seeks to enjoin a judgment for or the collection of the purchase money, and the case where the vendor, instead of proceeding against the vendee personally, is attempting to sell the land under a deed of trust or by a bill in equity; that a Ithough the facts may not *authorize the court to enjoin the collection of the purchase money by a proceeding against the vendee at law, yet, as a court of equity reprobates a sale of land when clouds are hanging over the title, it will for the benefit of the parties, and the security of the purchaser at any sale of the subject, enjoin or refuse to decree a sale of the land until the title is cleared up. The case of Beall v. Liveley, 8 Leigh 658, is a case of the first class. It was there decided that where a vendee is in possession of land under a conveyance with general warranty, and the title has not been ques-tioed by any suit prosecuted or threatened, such vendee has no claim to relief in equity against the payment of the purchase money, unless he can show a defect of title respecting which the vendor was guilty of fraudulent concealment or misrepresentation, and which the vendee had at the time no means of discovering. In Ralston v. Miller, 3 Rand. 44; Koger v. Kane, 5 Leigh 606; Clarke v. Hardgrove, 7 Gratt. 399, this court has extended the relief to cases where the vendee, placing himself in the position of the superior claimant, can show clearly that the title is defective.
The principle that a court will not sell or permit a sale of land with a cloud hanging over the title, is affirmed in Lane v. Tidball, Gilm. 130; Gay v. Hancock, 1 Rand. 72; Miller v. Argyle, 5 Leigh 460.
In the present case, which was a bill filed to subject the land to sale for payment of the purchase money, in consequence of the refusal of the trustees to sell, the appellant resisted the sale, first, upon the ground of a deficiency in the quantity; and secondly, because the complainants had failed to make a clear title to the land sold and conveyed by them.
The first ground is not assigned as error in the petition, and is clearly untenable. The vendors offered to survey the land. A survey was in part actually *made in the presence of all the parties, when the appellant stopped the survey, declaring himself willing to take the land at what they held it, be it more or less. The contract was then consummated; the deed, and a deed of trust to secure the purchase mone3r were executed, both bearing date on the 4th of January 1828.
That this was after the partial survey, is shown by the testimony of Robert Sneed, *632 from, which it appears that at the time of the purchase, William Sanders was to become surety for the purchase money, and who it seems had an interest, in the purchase; that when they met to survey, Sanders refused to become surety, and the appellant agreed to give a deed of trust on his own land and the land purchased, on Sanders’ consenting to relinquish his interest in the purchase; and thereupon they commenced the survey as aforesaid. ' Whatever right the appellant may have had to the survey under the first purchase, he then waived it.
As to the title, the appellant did not agree to rest upon the covenants of his deed alone. The parties contracted with a full knowledge of the facts in regard thereto; and on the same day the deed and deed of trust were executed, the appellant took from the appellees, his vendors, a bond in the penalty of one thousand dollars, with a condition which recited they had sold to the appellant the land formerly belonging to William Barnett deceased, in which land Elisha Barnett’s interest was not conveyed; and binding the parties to make a complete title to said Elisha Barnett’s and others interest.
Under this obligation the appellant could have sued, if the obligors failed to make a title in a reasonable time: He was not bound to wait until evicted. The vendors, in executing a deed with covenants of warranty, had not fully acquitted themselves of all obligation to active effort to get a clear title for the vendee. The burden of proof did not devolve on him to show *an eviction or a suit threatened or prosecuted, or that the title was clearly defective. The defect of title was admitted, and it was the duty of the appellees to have cured it, before they instituted their suit or called on the trustees to sell. The conveyance was executed, and the appellant gave his notes for the purchase money on the 4th of January 1828, the last installment falling due on the 1st of January 1832; and the suit was brought on the 21st of August 1834. At that time the appellees were the defaulting parties, as they claimed the whole purchase money, and asked for a sale of the whole tract, notwithstanding their failure to make a clear title to Elisha’s share. The appellant was well warranted in resisting such sale until the title was made. He however did not ask for a rescission, but objected to paying for the land until his title was perfected according to the terms of the deed from the complainants to him. In this state of the case, if the appellees had procured the proper deeds and releases at any time before final decree, they would then have been entitled to a decree for their purchase money and for a sale of the land to pay it; for then the principle settled in the cases referred to would not have applied; the court would not have been decreeing a sale of land with a cloud hanging over the title. But time and possession may effect the same thing that an actual release or conveyance would have done. The conveyance was executed, and as it would seem, possession taken under it as early as 1828. Owing to the delays in the progress of the suit, caused in part apparently, by the claims to credits asserted by the appellant, and his contumacy in resisting the orders of the court to produce his vouchers before the commissioner, no decree for a sale was rendered until the 28th of September 18S2, upwards of 24 years after the sale and conveyance. Our statute, Code, ch. 149, \ 1, p. 590, limits the right of entry to fifteen years after *the right to make such entry shall have accrued; and furthermore allows ten years within which persons laboring under disabilities may enter or sue, next after the time such person shall have ceased to be under disability. .
The appellant did not suggest in his answer that he had been disturbed in the enjoj'ment of the property. No suggestion of any disturbance was made before the interlocutory decree. And after such a lapse of time, it is not reasonable to suppose that there could be any danger of such disturbance.
It seems there were nine heirs or devisees to whom the land descended or was devised. The answer alleges that Elisha Barnett’s share has never been conveyed. Elisha Barnett is examined as a witness, and deposes that he had conveyed his right, title and interest in the land belonging to his father, to Mayer Pollack; and a deed from him to Mayer Pollack for his ninth part of said land, dated and recorded in 1809, is filed as an exhibit. Cisley Pollack, who was one of the heirs or devisees, united in the deed to the appellant, conveying in her own right, and in right of Mayer Pollack deceased, as far as she had title. Under this conveyance the appellant entered; and no person claiming under Mayer Pollack appears to have asserted any adverse claim; and unless they labored under disability, which is not alleged, the presumption is that Mrs. Pollack had title, as she undertook to convey something; or that those entitled have acquiesced in her act. Another of the heirs, George C. Barnett, seems to have united with Elisha in a deed of trust dated and recorded in 1811, conveying their interests in the estate, real and personal, of their father, to secure certain debts. There is nothing to show that any action ever took place under that deed, or that any claim was ever asserted under it. And after a lapse of forty-one years, it is not to be presumed that any such *claim could be asserted successfully. George C. Barnett seems to have left the country and died unmarried; and his interest to have passed to the other heirs, and their deed conveyed it to the appellant, except the part which descended to Elisha; and as he seems to have lived in the country, and not to have labored under any disability, his deposition having been taken as late as 1835, time would bar his claim.
It is further objected that Mrs. Turner R. Henley, who with her husband united in the deed to the appellant, and acknowledged *633 it when she became a widow, had previously united with her husband in a conveyance to another. No such deed is filed. There is a certificate of the clerk of Gooch-land county that Turner R. Henley has executed a deed of trust conveying all the interest of Henley and wife in the real and personal estate of William Barnett deceased, to secure a debt of one hundred and six dollars and thirty-four cents due to R. K. Dabney. The inference from the certificate is, that Mrs. Henley did not unite in it. There is also a deed filed purporting- to be a deed from John V. Miller'to John Thompson, jr., dated 20th July 1844, conveying the interest of Henley and wife in the land and personal estate of William Barnett deceased ; reciting that it is the same conveyed to said Miller by William Gray and William Miller, trustees, for the benefit of R. K. Dabney, in a deed of trust executed by Henley and wife to them, by deed duly recorded on the 21st of September 1829. This would be anterior to the regular acknowledgment by Mrs. Henley of the deed executed by the heirs to the appellant. But in reference to this share, it is sufficient to say it does not appear she ever signed or acknowledged the deed of trust referred to. It does appear she has regularly executed the deed to the appellant; that he has held possession under it for his own use, and such possession would bar any claim under the deed of trust. *The parties seem to have treated this matter as clear from doubt. The appellant claimed to be entitled as assignee for value of T. R. Henley of his entire interest in the purchase money for the land. His exception to the report of the commissioner for not allowing him credit for this interest, was sustained, and the credit allowed in the decree.
It is further objected that Mrs. Robert E\ Barnett did not unite with her husband, who was a legatee, in the conveyance to the appellant. The contingent right of dower in one-eighth of a tract of two hundred and fifty-seven acres of land of no great value, is too uncertain and trifling to create such a cloud over the title as to affect its price, if sold under the decree.
It does not appear that Betsy Southworth, wife of George Southworth, was ever examined privily and apart from her husband. But she was a plaintiff in this suit. On the death of her husband she continued to prosecute it, and the interlocutory decree for a sale is in her name as widow. A sale would bind her right, and upon the coming in of the report and final decree, an order could be made directing her to execute a conveyance, if required.
Mrs. Nuckols, another of the heirs, seems to have acted by her attorney in fact or agent William Nuckols. No objection is taken in ‘the answer on this ground; and in the account filed by the appellant, and his exceptions, he claims credit for a fee paid for recording a power of attorney from Mrs. Nuckols to William Nuckols. The objection probably was not riiade because the parties knew of the existence of the power.
I think, upon the whole, that at the time the decree was rendered, in the absence of any suggestion that the purchaser in possession had ever been disturbed, time had effected what it was originally the duty of the vendors to have done, quieted the title. That there was no danger, after such long exclusive enjoyment, *that the vendee or any purchaser at the sale could ever be disturbed by the assertion of any of the adverse claims relied on in the answer, and that there was no error in subjecting the land to sale when the decree was rendered.
It is furthermore objected to the decree that the commissioner and the court erred in refusing the appellant various credits claimed by him. The appellees held his bonds, and the duty of showing payment devolved on the appellant. As early as October 1835, the cause was referred to a commissioner, to take an account of payments ; and from that time down to 1843, when a report was made, repeated efforts were made to compel the appellant to appear before the commissioner to submit his accounts and vouchers for examination. The appellees, for some reason, perhaps because they desired a hearing, seemed to think it devolved on them to have these vouchers exhibited, and therefore moved for rules against the appellant to show cause why he should not be attached for his failure to exhibit his vouchers of payment, if he had any. Their efforts were unsuccessful, and the commissioner was at last constrained to make up his account from the evidence then in the record. The commissioner rejected some claims set forth in an account filed by the appellant with his answer, because no evidence was adduced to sustain them: and none has been adduced since. As to the application of the credits to the first bond; if the appellant had appeared with his proof before the commissioner, it is possible he might have shown that some of the credits applied by the commissioner to the bond lifted by him, were applicable to the second bond with which he has been charged. But these were questions which should have been raised before the commissioner, who, with the parties before him, and when the transactions were fresh, and the parties concerned in them still living, might have arrived *at a just conclusion. As the case stood before him, he could make no other application of the credits than he did; and if the appellant is injured thereby, it is the consequence of his own obstinacy in contumaciously refusing to obey orders entered in fact for his own benefit.
I think the decree was correct on the merits at the time it was rendered: But I am further of opinion, that as the appellant was in no default when the bill was filed, he was entitled to his costs in the court below; and that the decree in giving costs against him is erroneous; and under the authority of Ross v. Gordon, 2 Munf. 289, and other cases since, should be reversed as to the costs, with costs in this court to *634 the appellant; and affirmed in all other respects.
The decree was as follows:
The court is of opinion, that at the time the bill was filed the appellant was in no default in resisting' a sale of the land conveyed to him until his vendors had complied with the terms of the contract appearing in the condition of the bond dated the 4th January 1828, filed as an exhibit with the answer.
The court is further of opinion, that as the parties might have perfected the title at any time before the hearing, so as under the pleadings to have entitled them to a decree sujecting the land to sale; the lapse of time, the uninterrupted enjoyment and possession of the land under the deed, the absence of any suggestion of any disturbance or the assertion of any adverse claim had at the time the decree was entered, quieted the title in the appellant, and cured all such defects in the title set forth in the answer or disclosed by the record, as should operate to prevent the court from subjecting the land conveyed to sale for the payment of the residue of the purchase money. The court is therefore of opinion, that there is rio error in so much *of the interlocutory decree as directs the sale of the land therein mentioned.
The court is further of opinion, that there was no error in refusing to allow the appellant, for the alleged deficiency in the quantity of the land sold, or in overruling his exceptions so far as the same were overruled, and in ascertaining the balance of purchase money due from him. But the court is of opinion, that as the appellant was in no default in objecting to a sale when the suit was instituted, he was entitled to his costs ;■ and that said decree was erroneous in awarding costs against him. It is therefore decreed and ordered, that so much of said decree as awards costs against the appellant be reversed and annulled, that the residue of said decree be affirmed, and that the appellees pay to the appellant his costs by him expended as well about his defense in the Circuit court, as in the prosecution of his appeal aforesaid here, and the cause is remanded for a sale, and further proceedings in order to a final decree : which is ordered to be certified.